UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISON

JUANETTE YVONNE WARREN                                                          PLAINTIFF

v.                                                              CIVIL ACTION NO. 4:22-CV-P153-JHM

OFFICER McKINNEY et al.                                                         DFENDANTS

### MEMORANDUM OPINION

Plaintiff Juanette Yvonne Warren, a prisoner, initiated this *pro se* 42 U.S.C. § 1983 action. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the following reasons, Plaintiff's claims will be dismissed.

### I. STATEMENT OF CLAIMS

Plaintiff, who is incarcerated at the Daviess County Detention Center (DCDC), names as Defendants in the caption of her complaint the Owensboro Police Department (OPD) and Officer McKinney. In the body of the complaint, she indicates that Officer McKinney is sued in his individual capacity. She also adds as Defendants in their official capacities "OPD-Daniel Cameron" and Owensboro Circuit Court Judges J. Wethington and Castlen.[1]

The Clerk of Court is **DIRECTED** to add as Defendants in this action Daniel Cameron, Judge J. Wethington, and Judge Castlen.

The complaint alleges that Plaintiff has been falsely accused of possession of methamphetamine and synthetic weed and tampering with physical evidence. She explains that, while at a Days Inn Hotel in Owensboro, she accompanied another woman, Jen Blaisdell, who

---

[1] The Court takes judicial notice that Daniel Cameron is the Attorney General of the Commonwealth of Kentucky and that the correct name of the court is the Daviess Circuit Court.

wanted to purchase drugs, to a room where Blaisdell talked with another woman, Candice McKinney, about "scoring some meth."[2] According to Plaintiff, during the attempted purchase, she was handed a bag of synthetic weed and meth, at which point Plaintiff unrolled "them and look at them both. I then roll up the bags and hand them back . . . tell her I'm not here to purchase any drugs." After receiving the money for the purchase from Blaisdell, Plaintiff states that Ms. McKinney left the room to purchase the drugs. Plaintiff further states that, after about two hours, Ms. McKinney returned and said that the police were downstairs. The police then came into the room "and say hands up. So I'm hands up sitting on the bed . . . [Officer] McKinney searches me. No woman officer on the seen. Violates my rights."

The complaint continues that during the search of the room Officer McKinney found the drugs that Ms. McKinney had stashed behind the dresser. Plaintiff states that she had no knowledge of this. She alleges that she told Officer McKinney that the drugs did not belong to her, but he responded that he had seen her throw them behind the dresser and that he was charging her with possession of meth and synthetic weed and tampering with evidence. Plaintiff states that she told him, to no avail, that he could not do that because the items were not found in her possession or on her person. She also alleges that she and the only other black person in the room were arrested and that no white people were. She asserts that Officer "McKinney is a racist and should lose his job for falsely accusing her[.]"

Plaintiff alleges that she is currently being held twice for the same charges. According to Plaintiff, she was "released [after her arrest] in 2019[.] I was given a diversion;" she was told that she had served her time; and she asked a guard when she was released whether she had any more court dates and he told her that she did not and that she was free to go. However, Plaintiff

---

[2] The complaint does not indicate that Ms. McKinney is related to Officer McKinney.

relates, she later found out that she had "a failure to appear in September 2022," for which she has been arrested and incarcerated.

Plaintiff requests compensatory and punitive damages, expungement of records, and release with no parole or probation.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### *A. False-arrest claim against Officer McKinney*

Plaintiff brings a false-arrest claim against Officer McKinney in his individual capacity for allegedly falsely arresting her when no drugs were on her person or in her possession and for doing so because he was racially biased.

A claim brought under the Fourth Amendment for false arrest challenges detention without legal process and accrues when the alleged false imprisonment ends. *Wallace v. Kato*, 549 U.S. 384, 389 (2007). This occurs either at release following arrest or, if the arrest is followed by criminal proceedings, no later than the first judicial proceeding subsequent to arrest. *See id.* at 388-91; *Fox v. Desoto*, 489 F.3d 227, 233 (6th Cir. 2007). The Supreme Court has held that this occurs when a plaintiff is "bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 389.

The KYeCourts CourtNet 2.0 system (CourtNet), *see* https://kcoj.kycourts.net/kyecourts, shows that Plaintiff was charged on October 4, 2018, and arraigned on October 5, 2018, in *Commonwealth v. Warren*, Daviess Circuit Court, No. 18-F-1308.[3] The arrest citation in that case details that Plaintiff was arrested on October 4, 2018, at a Days Inn Motel on charges of possession of methamphetamine, possession of synthetic drugs, and tampering with physical evidence.

The statute of limitations for § 1983 actions is governed by the limitations period for personal-injury cases in the state in which the cause of action arose. *Wallace*, 549 U.S. at 387. In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in Ky. Rev. Stat. § 413.140(1). *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Although state law establishes the statute of limitations for § 1983 actions, federal law controls

---

[3] Courts may take judicial notice of public records. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

on the issue of when the statute of limitations begins to run. *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). While the statute of limitations is an affirmative defense, when the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *Jones v. Bock*, 549 U.S. at 215; *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate.").

Plaintiff certified that she delivered the complaint to prison authorities for mailing on October 26, 2022, and, pursuant to the "mailbox rule," the Court considers this date to be the date that she filed this civil action.[4] Thus, Plaintiff did not bring this civil action until more than four years after her arraignment in October 2018, well outside the one-year statute-of-limitations period. Consequently, her claim for false arrest is untimely and, therefore, must be dismissed as frivolous. *See, e.g.*, *Castillo*, 52 F. App'x at 751.

"Furthermore, to the extent that Plaintiff is alleging a separate claim for racial profiling, the claim . . . accrued on the date of Plaintiff's arrest," *Sydnor v. Louisville Police Dep't*, No. 3:18CV-P186-JHM, 2018 WL 4210788, at *3 (W.D. Ky. Sept. 4, 2018) (citing *Graves v. Burns*, No. 3:15-cv-712-DJH, 2016 WL 3748526, at *4 (W.D. Ky. July 8, 2016) (citing *Delaney v. Johnson City, Tenn. Police Dep't*, No. 2:09-CV-269, 2011 WL 540295, at *3 (E.D. Tenn. Feb. 4, 2011)), and is likewise time-barred.

---

[4] Under the prison mailbox rule, the complaint is deemed filed when presented to prison officials for mailing. *See Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

### B. Claim related to Officer McKinney's search without a female officer present

Plaintiff alleges that Officer McKinney searched her on the scene without a female officer present. She does not allege that he forced her to disrobe or touched her in an inappropriate way during the search.

First, a criminal suspect has no constitutional right to have a pat-down search incident to arrest "performed by someone of her gender." *Caldwell v. Rubbo*, No. 92-7177, 1993 WL 306052, at *1 (4th Cir. Aug. 10, 1993) (per curiam); *Madyun v. Franzen*, 704 F.2d 954, 957, n.3 (7th Cir. 1983) ("[Plaintiff] points to no case in which opposite sex frisk searches have been held to violate prisoners' *federal* constitutional rights"); *see also Davis v. Merlo*, No. 2:10-11403, 2010 WL 1790356, at *2 (E.D. Mich. May 3, 2010) ("[P]laintiff does not allege that [the male officer] did anything improper during the pat-down search made incident to plaintiff's arrest [and] she is not entitled to relief on this claim."); *Ziegler v. Doe*, No. 01–10377–BC, 2003 WL 21369254, at *3 (E.D. Mich. June 11, 2003) ([P]laintiff alleges a generalized right to a non-invasive pat-down search by an officer of the same sex, a rule that would not only be impractical, but also has no support in the jurisprudence."). Consequently, Plaintiff fails to state a claim upon which relief may be granted.

Additionally, the Court notes that the search occurred in October 2018, more than one year before Plaintiff filed this civil action. Therefore, this claim is also time-barred and subject to dismissal as frivolous as well.

### C. Claim of not being informed of future court dates

Plaintiff alleges that she is currently being "held twice" for the same charges because when she was released from prison and "given a diversion" she was told that she had served her

time and had no more court dates, yet she was arrested and incarcerated after "a failure to appear in September 2022."

Plaintiff does not name the person who gave her this allegedly incorrect information as a Defendant. She does name as Defendants the OPD, two judges of the Daviess Circuit Court, and the Kentucky Attorney General, although she makes no specific allegations against them. However, even were the Court to read her complaint liberally as alleging that the OPD, judges and/or Attorney General Cameron are responsible for the alleged misinformation and her later arrest, Plaintiff's claims fail.

*1. Defendant Owensboro Police Department*

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

OPD is not a "person" subject to suit under § 1983 because municipal departments, such as police departments, are not suable under § 1983. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a police department is not an entity which may be sued under § 1983); *see also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983). An action brought against a municipal department should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews*, 35 F.3d at 1049. In this case, the claims against OPD will be construed as claims against the City of Owensboro.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether this municipality is responsible for the alleged constitutional violations.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Commis of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that the plaintiff must demonstrate "deliberate conduct").

Here, Plaintiff has not alleged that any Defendant acted pursuant to a municipal policy or custom in misinforming her about court dates, but instead alleges only an isolated occurrence affecting only her. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that any of the misinformation

occurred as a result of a policy or custom implemented or endorsed by the City of Owensboro, the complaint fails to establish a basis of liability against the municipality.

Accordingly, Plaintiff's claim against OPD will be dismissed for failure to state a claim upon which relief may be granted.

*2. State-court judges and Attorney General Cameron*

State-court judges and the Kentucky Attorney General are state officials. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will*, 491 U.S. at 71. Thus, in seeking money damages from these state officials in their official capacities, Plaintiff fails to state a cognizable claim against them under § 1983. Plaintiff's official-capacity claims against these Defendants also fail because claims against state officials in their official capacities are deemed claims against the Commonwealth of Kentucky and are, therefore, barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 at 166, 169; *see also Bennett v. Thorburn*, 843 F.2d 1390 (6th Cir. 1988) (concluding that an official-capacity suit against a judge who presided over state-court litigation was barred by the Eleventh Amendment).

Moreover, even if Plaintiff had sued these Defendants in their individual capacity, the complaint still fails to state a claim against them.[5] "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff alleges no personal involvement by any of these Defendants in misinforming her about her court dates, and her claims against them fail to state a claim for this reason.

---

[5] The Court may allow a plaintiff to amend the complaint. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act])." However, the Court is not required to do so where amendment would be futile. *See Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014).

Moreover, because judges are entitled to absolute immunity from suits for money damages for all actions taken in their judicial capacity, unless those actions are taken in the absence of any jurisdiction, which Plaintiff does not allege. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citing *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam)), any individual-capacity claim against them would be barred by judicial immunity.

Additionally, even if Defendant Cameron were the other Defendants' supervisor and/or otherwise responsible for the misinformation about Plaintiff's court dates, this claim would still fail because, as already explained, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Thus, because the complaint contains no allegations that Defendant Cameron was actively involved in the alleged violation of Plaintiff's constitutional rights, and any individual-capacity claim against him would be based solely on his "supervisory role" as Kentucky's Attorney General, such a claim would fail to state a claim upon which relief may be granted.

### D. Requests for expungement and release from incarceration

Plaintiff's request for expungement of her record fails to state a claim upon which relief may be granted because "[t]he right to expungement of state records is not a federal constitutional right." *Duke v. White*, 616 F.2d 955, 956 (6th Cir. 1980) (per curiam).

Finally, to the extent that Plaintiff seeks release, such relief is not available under § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

## III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, dismiss this action.

Date: May 5, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Defendants
      Daviess County Attorney
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.009